**FILED**

**September 26, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:56 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| **RANDY WHITE,** | ) | **Docket No.: 2016-04-0074** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 17376-2015** |
| | ) | |
| **BOLES TRUCKING,** | ) | **Judge Robert Durham** |
| **Employer.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND TEMPORARY DISABILITY BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on September 6, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Randy White, on March 14, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. White filed the Request to determine if the employer, Boles Trucking, is obligated to pay for a fusion surgery on his lumbar spine and temporary disability benefits from the date Boles terminated them through the present and ongoing, for an alleged work-related injury he sustained on February 11, 2015.

The dispositive issue is whether Mr. White's need for a fusion at L4-5 primarily arose out of and in the course and scope of his employment with Boles.[1] The Court holds Mr. White provided sufficient evidence to establish he is likely to prevail at a hearing on the merits on that issue and is thus entitled to benefits for treatment of the injury.

---

[1] The parties stipulated at the hearing that the disc protrusion at L5-S1 is primarily related to Mr. White's work injury of July 6, 2014, and Boles has agreed to pay for the reasonable and necessary medical treatment recommended by Dr. Shibayama for that injury. The parties further agreed that, should Mr. White establish he is likely to prevail at trial as to whether his current condition and need for fusion is compensable, Boles shall pay temporary disability benefits owed Mr. White due to his inability to work as a result of his condition. Therefore, the sole issue presented to the Court was whether Mr. White's need for a fusion at L4-5 arose primarily from his alleged work-related injury on February 11, 2015.

## History of Claim

Mr. White testified he is sixty years old and has been a truck driver for most of his working life. He worked on and off for Boles, owned by his daughter and her husband, for the past fifteen years with his latest stint beginning approximately six years ago. Mr. White's job primarily consisted of travelling to and from Tennessee to Louisville, Kentucky, picking up and dropping off trailers filled with lime or other materials.

With regard to past medical problems, Mr. Boles testified he sustained serious injuries to his lower extremities approximately twenty years ago, requiring reconstruction of his right leg and steel plates in his left foot. He stated the injury still causes him occasional pain but did not interfere with his ability to do his job.

Mr. Boles also conceded he suffered an injury to his low back in 2007 for which he received treatment from Dr. John Hudson. According to Dr. Hudson's records, Mr. Boles complained of low back pain radiating to his legs, as well as numbness and "pins and needles" down his left leg, and some constipation. (Ex. 3D at 1.) He further stated he could only stand or walk for fifteen minutes before the pain required him to rest. *Id.* at 2. Mr. Boles underwent an MRI that showed degenerative disc disease at L5-S1 and T12-L1 with no herniation. *Id.* at 9. Dr. Hudson did note a left-sided disc protrusion at L5-S1. *Id.* at 10. However, Mr. Boles testified his back and leg pain subsequently improved with no residual symptoms, and he was able to return to work at full duty with no restrictions.

Mr. White and his daughter, Chastity Boles, both testified that, prior to July 6, 2014, he performed his job duties with no restrictions and no complaints other than normal aches and pains associated with work. On July 6, 2014, Mr. White sustained a work-related injury to his lumbar spine, resulting in a left-sided herniation at L5-S1. (Ex. 2 at 6.) Boles accepted the injury as compensable and authorized Dr. Juris Shibayama to provide treatment. *Id.* At his first visit to Dr. Shibayama, Mr. Boles complained of "pain going across his back and the tops of his feet hurt" with "left greater than right throbbing." (Ex. 3B at 3.) Dr. Shibayama noted Mr. White suffered from a left disc herniation at L5-S1 as well as spondylolisthesis at L4-5. *Id.* He eventually performed a left microdiscectomy at L5-S1 on December 1, 2014. *Id.*

On January 15, 2015, Dr. Shibayama noted Mr. White recovered "very well" from his surgery and was now complaining of no leg pain at all. *Id.* at 11. As a result, he released Mr. White to return to work at full duty with no restrictions. *Id.*

Mr. White testified he returned to work for Boles at full duty and had no problems performing all his job requirements until February 11, 2015. Mr. White testified that on that date, he had climbed onto his truck to add antifreeze to the engine. As he was getting

2

down, he slipped and fell to the ground. He immediately felt intense, burning pain down both legs. He testified that he called Ms. Boles and told her about the incident within minutes of its occurrence and informed her he would not be able to drive the truck back to Tennessee.

Ms. Boles confirmed that Mr. White called her on Tuesday, February 11. She testified that he told her his legs had been burning since Sunday night/Monday morning, but after getting down from his truck after putting antifreeze in it, the pain and burning in his legs and back became intolerable. On cross-examination, she confirmed that from January 15, 2015, when Dr. Shibayama released Mr. White, through February 11, Mr. White had returned to full duty and did not complain of back or leg pain to her. Mr. White testified he could not remember whether he told her his feet had been bothering him on Sunday and Monday, but the burning pain in his back and legs he experienced after falling from his truck was a distinct change from any pain he experienced before the fall. He further testified that, prior to the fall, he had no problems performing his job as a truck driver. Nevertheless, Ms. Boles was unequivocal in her testimony that he told her on February 11 that his legs had been burning for two days.

Mr. White returned to Dr. Shibayama on February 24. (Ex. 3E at 1.) On the intake form, Mr. White noted, either directly or through his wife, that he was experiencing "70%" back pain, but did not note any percentage of pain in his legs. However, on the same page, Mr. White drew straight lines down both legs of a human diagram, indicating he had pain in his legs, as well as thoracic back pain. *Id.* Dr. Shibayama's record states Mr. White complained of only thoracic pain and no leg pain. He diagnosed a thoracic strain and recommended therapy. (Ex. 3C at 2.) Mr. White testified that the thoracic pain resolved shortly after this visit to Dr. Shibayama.

Mr. White began physical therapy on March 10. *Id.* at 9. According to the records, he complained of pain in his low back, right hip and left leg with positive bilateral straight leg raise tests. *Id.* Mr. White returned to Dr. Shibayama on March 17. According to the intake form, Mr. White indicated he had pain down both legs as well as in his back and stated the percentage of pain was "60%" in all three areas. *Id.* at 14. However, Dr. Shibayama again noted in his report that Mr. White did not complain of leg pain. *Id.* at 13. Mr. White returned on April 14, reporting no improvement. *Id.* at 15. At this point, Dr. Shibayama noted Mr. White's pain was across his low back and radiating into the right buttock more than the left, and he ordered a lumbar MRI. *Id.* at 16. The MRI revealed spondylolisthesis at L4-5 "translating 4.5 mm with severe disc degeneration at L5-S1." *Id.* at 17. Dr. Shibayama opined the spondylolisthesis was "exacerbated from his work related-accident where he fell backwards holding the hood of a truck." *Id.* In June 2015, Dr. Shibayama noted Mr. White's pain had greatly improved and released him to return to work with restrictions, again noting that Mr. White's continued pain was due to the work-related accident in February 2015. *Id.* at 18.

3

Mr. White testified he tried to return to work following the June visit, but after several months found he was severely limited in his activities due to the pain in his back and legs. He returned to Dr. Shibayama in January 2016, and he ordered another MRI. *Id.* at 22. Dr. Shibayama noted the MRI revealed instability at the L4-5 level due to the spondylolisthesis as well as mild impingement on the right S1 nerve root. *Id.* at 25. He opined in his record that the February work injury exacerbated Mr. White's condition, causing the "pre-existing spondylolisthesis to become symptomatic after the injury," and therefore, finding it to be work-related. *Id.* As a result, he took Mr. White off work and recommended a fusion as well as a right L5-S1 microdiscectomy. *Id.*

On June 21, 2016, counsel for the parties took Dr. Shibayama's deposition. (Ex. 2.) In his deposition, Dr. Shibayama went over his medical records detailing his treatment of Mr. White. He opined the left L5-S1 microdiscectomy he performed in December 2014 was causally related to a work injury Mr. White incurred on July 6, 2014. *Id.* at 6. He also conceded that, based on the intake sheets, it appeared Mr. White complained of leg pain at his visits in February and March of 2015 despite his notes to the contrary. *Id.* at 13.

Dr. Shibayama described the pain from the February 2015 incident as differing from that Mr. White experienced after the July 2014 accident, in that the pain from the July episode was more of a radiating pain going all the way down his legs and the pain from the second incident was a diffuse back pain radiating into his hips. *Id.* at 14. He opined that the spondylolisthesis at L4-5 became unstable following the February 2015 incident, and that this exacerbation "initially jarred" the discs from their normal alignment, causing irritation of the nerves. *Id.* at 15.

Dr. Shibayama noted in his deposition that the spondylolisthesis remained structurally unchanged from the MRI obtained prior to the February 2015 incident and the one taken afterwards, although the latter MRI did reveal a new disc protrusion on the right at L5-S1. *Id.* at 18. Given that Mr. White's pain was worsening, he recommended the L4-5 fusion as well as the right L5-S1 microdiscectomy. *Id.* With regard to causation, Dr. Shibayama opined that Mr. White's pre-existing spondylolisthesis was asymptomatic prior to February 11, 2015. *Id.* at 19. The jarring from the event increased the instability at L4-5, which led to an exacerbation of Mr. White's symptoms, so that surgery is now necessary to stabilize the discs and relieve the pain. *Id.*

On cross-examination, Dr. Shibayama conceded he rendered his opinion without viewing Dr. Hudson's records, which did reveal some degenerative disc disease in 2007, and that he would expect the spine to continue to degenerate from that point. *Id.* at 27. He further testified Mr. White's obesity could have contributed to advancing the degeneration. *Id.* Dr. Shibayama testified Mr. White's symptoms improved significantly following his first surgery, which indicated to him that he was correct in assessing Mr. White's primary problem as being the left-sided disc protrusion at L5-S1. *Id.* at 29-30.

4

He also testified that, based on his notes, he did not record leg pain at the time of Mr. White's initial visits following the February 11, 2015 incident. *Id.* at 36. However, he felt at the time that the problem was more thoracic than lumbar in nature. *Id.* at 40-41. He admitted that according to his December 2014 note, Mr. White was complaining of some pain in his hips and his legs. *Id.* at 47. He conceded placing Mr. White at MMI in June 2015, but later determined his pain had worsened. Dr. Shibayama explained Mr. White's condition waxed and waned, which was typical for spondylolisthesis. *Id.* at 49.

Dr. Shibayama explained that a 4.5-millimeter translation meant the L4 disc had shifted that far over the L5 disc and this was a precise measurement. *Id.* at 51. Furthermore, the distance did not change between 2014 and 2016. *Id.* Dr. Shibayama testified the current need for the fusion, as opposed to 2014, was because Mr. White went from being asymptomatic for his spondylolisthesis to becoming symptomatic, but he cannot document an anatomic change given no measurable difference in the shift since 2014. *Id.* at 53. He further admitted that the symptoms Mr. White currently complains of are the same type of symptoms described in his operative report for the surgery performed in December 2014. *Id.* at 54.

Nevertheless, when specifically asked to apply percentages to the various factors that have created Mr. White's need for a fusion, Dr. Shibayama attributed 60% to the February 11, 2015 incident where Mr. White caught himself and fell. *Id.* at 55. He admitted there were other factors. However, the basis for his opinion was that Mr. White's spondylolisthesis was asymptomatic in January 2015, but, after the incident in February, Mr. White now requires surgery to stabilize the spine and reduce the nerve irritation caused by the spondylolisthesis. *Id.* at 56. He admitted this opinion assumes Mr. White's spondylolisthesis became symptomatic only after the fall occurred on February 11, 2015, as described by Mr. White. *Id.* at 57. He further conceded that, if the severe, radiating pain began before February 11, 2015, the fall would be less of a contributing factor. *Id.* at 57. Finally, Dr. Shibayama opined that the right L5-S1 disc protrusion was primarily caused by· Mr. White's 2014 work-related injury, not the February 11, 2015 incident. *Id.* at 60.

On redirect examination, Dr. Shibayama explained that the February 11, 2015 incident irritated Mr. White's spondylolisthesis, which in turn irritated the nerve roots by causing the bones in the spine to "rock," thereby increasing the instability of the spine at that level and causing the bones to move in the area of the nerve roots, thus irritating them. *Id.* at 62-63. Dr. Shibayama described this as an exacerbation of the spondylolisthesis, which causes intermittent compression on the nerve roots in the area. *Id.* at 63. On re-cross examination, Dr. Shibayama explained that, even though he found Mr. White to be at MMI in June 2015, and did not recommend surgery until January 2016, he still believes the February 2015 incident "spurred" the instability leading to the waxing and waning of his symptoms and his current need for a fusion. *Id.* at 65.

5

However, he admitted there was some degree of speculation in his opinion and agreed there was no anatomical change in the level of Mr. White's spondylolisthesis. *Id.*

At the hearing, Mr. White contended he presented sufficient evidence to establish he was likely to prevail in his argument that he sustained a work injury on February 11, 2015, that aggravated his pre-existing spondylolisthesis and is the primary cause of his need for a fusion at L4-5. In response, Boles argued Mr. White failed to establish that he suffered a work injury on February 11, 2015, but even if he did, the medical evidence does not establish a compensable aggravation because there was no anatomical change at L4-5.

### Findings of Fact and Conclusions of Law

The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Mr. White has the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Mr. White need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he has the burden to come forward with sufficient evidence from which the trial court can determine he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order to prevail, Mr. White must establish he suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). However, the definition of a compensable injury does not include the aggravation of a pre-existing condition unless "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* The statute goes on to define this phrase to mean it must be proven by a preponderance of the evidence, and to a reasonable degree of medical certainty, that the employment contributed "more than fifty percent (50%) to the death, disablement, or need for medical treatment, considering all causes."

6

*Id.* at subsections (B) and (C). "Reasonable degree of medical certainty" is defined as "more likely than not considering all causes, as opposed to speculation or possibility" on the part of the physician. *Id.* at subsection (D). Finally, the opinion of the authorized physician is presumed correct regarding causation. *Id.* at subsection (E).

In this matter, it is undisputed that Mr. White suffered from spondylolisthesis at L4-5 prior to his alleged work injury on February 11, 2015. Thus, there are two questions: (1) Whether Mr. White is likely to establish he was involved in a "specific incident" primarily arising out of and in the course and scope of his employment on February 11, 2015; and, (2) Whether the evidence is sufficient to establish he is likely to prevail at trial as to whether the alleged incident caused an aggravation of his pre-existing condition that "arose primarily out of and in the course and scope of his employment" as defined by Tennessee Code Annotated section 50-6-102(14) (2015). After considering the entire record, the Court finds the answer is "yes" to both questions.

Regarding the first question, Mr. White testified he slipped from his truck while stepping down after putting antifreeze in the radiator on February 11, 2015. He also gave this account to Dr. Shibayama when he saw him on February 24. (Ex. 2 at 9.) Ms. Boles corroborated Mr. White's testimony that he called her on February 11, 2015, complaining that his leg pain became intolerable after stepping down from his truck subsequent to filling it with antifreeze. Furthermore, both Mr. White and Ms. Boles testified he returned to working full duty after Dr. Shibayama released him on January 25 and worked a full day without complaints on February 10. Given the record as a whole, the Court finds Mr. White has provided sufficient evidence to establish he is likely to prove at trial that he was involved in a "specific incident" on February 11, 2015, that primarily arose out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14)(A) (2015).

With regard to the second question, this matter is quite similar to *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). In *Miller*, the employee suffered from pre-existing left hip osteoarthritis. *Id.* at *4. The treating physician opined the work injury caused the asymptomatic osteoarthritis to become symptomatic, stating that given the length of the employee's symptoms, he would characterize his condition as a "chronic exacerbation." *Id.* at *5. He further testified the worsening pain was the "primary indication" for surgery, and the accident hastened the need for it. *Id.* However, he also admitted he could not point to any anatomical change in the hip caused by the injury and that the employee would have eventually needed a hip replacement regardless of his fall. *Id.*

The Appeals Board in *Miller* found it was undisputed that the employee had no difficulties with his left hip prior to his fall and no limitations in his work activities. *Id.* at *13. It was further undisputed he suffered a work-related injury when he fell on his left

side and complained of radiating pain thereafter. *Id.* at *14. Finally, the Appeals Board found it significant that the doctor described the employee's condition as a "chronic exacerbation," thus implying more than just a "temporary flare-up" that had returned to its pre-existing baseline condition. *Id.* at *15-16. Accordingly, the Appeals Board held the employee was entitled to reasonable and necessary treatment for his left hip osteoarthritis. *Id.* at *19.

In this matter, the evidence establishes Mr. White had made a full recovery from his left L5-S1 microdiscectomy and returned to work at full duty in January 2015 following his release without restrictions by Dr. Shibayama. Mr. White testified he performed all the duties required of him prior to the work incident on February 11, 2015, without complaints or limitations. Ms. Boles corroborated his testimony in this regard. Therefore, despite the fact that Mr. White suffered from pre-existing spondylolisthesis with no indication of an anatomical change on a subsequent MRI, Dr. Shibayama opined the incident on February 11 increased the instability of Mr. White's spine. He opined the instability had increased to the extent that the bones now intermittently impinged on the nerve roots, causing leg pain, which necessitated a fusion to stabilize the spine. In fact, Dr. Shibayama maintained the fall from the truck was sixty percent of the cause of Mr. White's need for a fusion.

However, the issues regarding causation are not as clear as those in *Miller*. In this matter, Dr. Shibayama conceded that, if Mr. White were experiencing radiating pain down his legs prior to his fall on February 11, it could lessen the causation percentage he attributed to the fall. There is some evidence that this was the case. Dr. Shibayama conceded that Mr. White complained of bilateral leg pain prior to the left L5-S1 microdiscectomy performed in December 2014. However, he testified that, since the pain resolved following the surgery, he still believed the fall in February was the primary cause of Mr. White's continued long-term leg pain.

Furthermore, Ms. Boles testified that when her father reported his fall on February 11, he also told her he had been experiencing burning leg pain for the past few days. Mr. White testified he could not remember if he told her that, but was adamant he suffered significant and disabling pain only after he fell from the truck. Finally, Dr. Shibayama also conceded he initially released Mr. White to return to work in June 2015 after Mr. White reported an improvement in his symptoms and did not decide to do surgery until he returned over six months later. However, he also testified that the waxing and waning of symptoms was characteristic of spondylolisthesis, and he still opined that the fall was the primary cause of Mr. White's current condition and need for surgery.

Therefore, after balancing all of the evidence, the Court holds Mr. White has established he is likely to prevail at trial as to the issue of whether he sustained a fall at work that was the primary cause of the aggravation of his spondylolisthesis. Thus, Boles shall provide Mr. Boles with a fusion at the L4-5 level as recommended by his treating

8

physician, Dr. Shibayama.

**IT IS, THEREFORE, ORDERED** as follows:

1. Boles shall provide reasonable and necessary medical treatment for Mr. White's work-related injury of February 11, 2015, including a spinal fusion at L4-5, as recommended by his authorized physician, Dr. Shibayama.

2. This matter is set for Initial Hearing/Status Conference on November 10, 2016, at 9:30 a.m. C.T.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED THIS THE 26th DAY OF SEPTEMBER, 2016.**

Robert V. Durham, Judge
**Court of Workers' Compensation Claims**

Initial Hearing/Status Conference:

An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

9

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an

10

interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Wage Statement
2. Deposition of Dr. Juris Shibayama
3. Exhibits attached to Dr. Shibayama's deposition
4. Email from Chastity Boles to adjuster, Barbara Young

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Supplement to Request for Expedited Hearing
5. Notice of Expedited Hearing
6. Mr. White's Pre-Hearing Brief
7. Boles' Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 26th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Jill Draughon | | | X | jdraughon@hughesandcoleman.com |
| David Drobny | | | X | DDrobny@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12